BROUGHTON, et al. *vs.* THE PRESIDENT AND DIRECTORS OF THE BANK OF THE STATE OF ALABAMA.

1. Where notices, seeking to render a sheriff and his securities, liable for monies collected on execution, and which it is alleged he has not paid over, are returned executed,—they must be produced at return term, and the motion indicated by them, submitted, or they will be held to have spent their force and availability.

2. A notice to the sheriff alone, under the statutes of 1819 and 1826, authorises a judgment against him and his securities, or any one, or either of them, for monies collected on a *fi. fa.* and not paid over, on demand duly made.

3. A notice, in such a case, should contain a statement of every thing to be proved, in order to a recovery.

4. And a special demand on the sheriff, should be made, averred and proved.

5. Where a plea is erased, by drawing a pen over it, the Court will, if necessary, presume that it was done by leave of Court.

Error from Dallas Circuit court.
This action was commenced by notice, as follows :

STATE OF ALABAMA, DALLAS COUNTY—*ss.*
*To Jesse C. Farrar*, formerly sheriff of Monroe county, in said State, and to *Leonard Scott, Abel Farrar, Joseph Nettles, senior, Nathaniel Broughton, Daniel D. Shumate, James Wade*, and *Daniel McIntosh*, the securities of the said J. C. Farrar, for the due performance of his official duties of sheriff—Take notice—

"A judgment was rendered in and by the Circuit court of Dallas county, at the April term, one thousand eight hundred and twenty-six, of the said court, for the sum of five hundred and seventy dollars, debt, and eleven dollars and forty cents, damages, besides costs of suit, in favor of the President and Directors of the Bank of the State of Alabama, and against James Knight, Josiah Thomson and Randal Harris, which judgment was superseded—bond and security having been given for a writ of error. The said judgment was affirmed, on certificate, by the Supreme court of the State, at the January term, one thousand eight hundred and twenty-seven of said court, with the damages given by statute—for all which, judgment was rendered by said last mentioned court, as well against the said James Knight, Josiah Thomson and Randal Harris, as against Cullen C. Knight, James D. Godbold and Ezra Hill, their sureties in the bond for the writ of error.—To satisfy all which, with the costs of the Circuit court aforesaid, an execution, or writ of *fieri facias*, issued from the Circuit court of Dallas county, on the twenty-first day of May, one thousand eight hundred and twenty-seven, in favor of the plaintiffs, and against the said James Knight, Josiah Thomson, Randal Harris, Cullen C. Knight, James D. Godbold and Ezra Hill, defendants in the execution—for the sum of six hundred and fifty seven dollars seventy-two cents and three fourths of a cent.

This execution was made returnable at the October term, one thousand eight hundred and twenty-seven, of said Circuit court. It was directed to the sheriff of Monroe county, aforesaid, and commanded him to make the sum of six hundred and fifty-seven dollars and seventy-two and three-fourths cents, out of the goods and chattels, lands and tenements of said defendants in the execution.

This execution came to the hands of Jesse C. Far-

6P            7

rar, then sheriff of Monroe county.—He has made the money thereon due ; but has failed to pay it over, as he was in duty bound to do.   The following are the several items for which the execution issued, to wit, debt, five hundred and seventy dollars ; damages, eleven dollars and forty cents ; damages in the Supreme court, fifty-eight dollars and fourteen cents ; costs, eighteen dollars and eighteen and three-fourths cents.

At the next term of the Circuit court for Dallas county, to be held at Cahawba, on the fourth Monday of this month (September,) one thousand eight hundred and thirty, the attorney of the President and Directors of the Bank of the State of Alabama, will make a motion to the court, for judgment against you, or as many of you as receive notice, for the amount of money received by the said Jesse C. Farrar, as sheriff, on said execution, and not paid over by him,—together with such damages as are given by statute, for such his default.   Dated the eighth day of September, one thousand eight hundred and thirty.   The sheriff of Monroe county will execute this notice : hand a copy to defendants, and return this notice," &c.

This notice was served on Abel Farrar, Daniel D. Shumate, Nathaniel Broughton and Daniel M'Intosh. Defendant, Nettles, not found ; and defendants, Wade and Scott not in the county.

The following notice was issued to James Wade, one of the defendants, in Dallas county :

" State of Alabama, Dallas county.   To Jesse C. Farrar, formerly of the county of Monroe, in said State, and to James Wade, one of the securities of the said J. C. Farrar, for the due performance of his official duties of sheriff.   Take notice :—A judgment was rendered in and by the Circuit court of Dallas county, at the April term, one thousand eight hundred and twenty-six, of said county, for the sum of five hun-

dred and seventy dollars, debt, and eleven dollars and forty cents, damages, besides costs of suit, in favor of the President and Directors of the Bank of the State of Alabama, and against James Knight, Josiah Thomson and Randal Harris. This judgment was superseded; bond and security having been given for a writ of error,—and the said judgment was affirmed, on certificate, by the Supreme court of the said State, at the January term, one thousand eight hundred and twenty-seven, of said Supreme court, with the damages given by statute,—for all which, judgment was rendered by said last mentioned court, as well against the said James Knight, Josiah Thomson and Randal Harris, as against Cullen C. Knight, James D. Godbold and Ezra Hill, their securities in the bond, for the writ of error. To satisfy all which, with, the costs of the Circuit court, aforesaid, an execution, or a writ of *fieri facias*, issued from the Circuit court of Dallas county, on the twenty-first day of May, in the year one thousand eight hundred and thirty-seven, in favor of the plaintiffs, against the said James Knight, Josiah Thomson, Randal Harris, Cullen C. Knight, James D. Godbold, and Ezra Hill, defendants in the execution, for the sum of six hundred and fifty-seven dollars seventy-two cents and three-fourths of a cent

This execution was made returnable at the October term, one thousand eight hundred and twenty-seven, of said Circuit court. It was directed to the sheriff of Monroe county aforesaid, and commanded him to make the said sum of six hundred and fifty-seven dollars seventy-two cents and three fourths of a cent, out of the goods and chattels, lands and tenements of said defendants in the execution.

This execution came to the hands of Jesse C. Farrar, then sheriff of Monroe county; he has made the money thereon due; but has failed to pay it over, as he was in duty bound to do.

The following are the several items for which the

execution issued, to wit, debt, five hundred and seventy dollars; damages, eleven dollars and forty cents; damages in the Supreme court, fifty eight dollars and fourteen cents; costs, eighteen dollars and eighteen and three fourths cents.

At the next term of the Circuit court of Dallas county, to be held at Cahawba on the fourth Monday in the month of September, one thousand eight hundred and thirty—the attorney of the President and Directors of the Bank of the State of Alabama, will make a motion to the court, for judgment against you, or as many of you as receive notice, for the amount of money received by Jesse C. Farrar, as sheriff, on said execution, and not paid over by him; together with such damages as are given by statute, for such the default of the said Jesse C. Farrar. Dated the eighth day of September, one thousand eight hundred and thirty.

The sheriff of Dallas county will execute this notice, on such of the defendants as may be found in his county, and return the same to the next term of the Circuit court of Dallas county."

This notice was returned, as executed on James Wade.—None of the other parties found in the county.

The following alias notice was subsequently issued, to wit:—

"The State of Alabama, Dallas county, to wit:— To Jesse C. Farrar, formerly sheriff of Monroe county, in said State, and Leonard Scott, Abel Farrar, Joseph Nettles, senior, Nathaniel Broughton, D. Shumate, James Wade and Daniel M'Intosh, the securities of the said J. C. Farrar, for the due performance of his official duties of sheriff. Take notice:—A judgment was rendered by the Circuit court of Dallas county, at the April term, one thousand eight hundred and twenty-six, of said court, for the sum of five hundred and seventy dollars, debt, and eleven dollars and

forty cents, damages; besides costs of suit, in favor of the President and Directors of the Bank of the State of Alabama, and against James Knight, Josiah Thomson, and Randal Harris. This judgment was superseded,—bond and security having been given for a writ of error, and the said judgment was affirmed on certificate by the Supreme court, with the damages given by statute: for all which, judgment was rendered by said last mentioned court, as well against the said James Knight, Josiah Thomson and Randal Harris, as against Cullen C. Knight, James D. Godbold and Ezra Hill, their securities in the bond for the writ of error. To satisfy all which, with the costs of the Circuit court aforesaid, an execution or writ of *fieri facias* issued from the Circuit court of Dallas county, on the twenty-first of May, one thousand eight hundred and twenty-seven, in favor of the plaintiffs, and against the said James Knight, Josiah Thomson, Randal Harris, Cullen C. Knight, James D. Godbold and Ezra Hill, defendants in the execution, for the sum of six hundred and fifty-seven dollars and seventy-two cents and three fourths of a cent.

This execution was made returnable at the October term, one thousand eight hundred and twenty-seven, of said Circuit court. It was directed to the sheriff of Monroe county aforesaid, and commanded him to make the said sum of six hundred and fifty-seven dollars and seventy-two cents and three-fourths of a cent, of the goods and chattels, lands and tenements of said defendants in the execution.

This execution came to the hands of Jesse C. Farrar, then sheriff of Monroe county. He has made the money thereon due; but has failed to pay it over, as he was in duty bound to do.

The following are the several items, for which the execution issued, to wit, debt, five hundred and seventy dollars; damages, eleven dollars and forty cents; damages, in the Supreme court, fifty-eight dollars and

fourteen cents; costs, eighteen dollars and eighteen three fourths cents.

At the next term of the Circuit court for Dallas county, to be held at Cahawba, on the fourth Monday in April next, the attorney of the President and Directors of the Bank of the State of Alabama, will make a motion to the court for judgment against you, or as many of you as received notice, for the amount of money received by Jesse C. Farrar, as sheriff, on said execution, and not paid over by him, together with such damages as are given by statute, for such his default. This twenty-second March, one thousand eight hundred and thirty-one.

This notice may be considered in the nature of an alias notice, a similar one having issued, returnable to last term of said Circuit court; but which appeared not to have been served on J. C. Farrar and some of his securities; and which motion was continued. Dated twenty-second March, one thousand eight hundred and thirty-one.

The original has been executed on Abel Farrar, Daniel Shumate, Nathaniel Broughton and Daniel M'Intosh, &c. This notice was executed, by the sheriff, on Jesse Farrar, and returned," &c.

And at April term, one thousand eight hundred and thirty-one, the plaintiffs came, and the defendants being solemnly called to appear and plead to issue, came not. It was therefore considered by the court, that the plaintiffs recover of the defendants, the damages they may have sustained in the premises: but, because it was not known to the court what those damages were, therefore, let a jury come at the next term of this court to inquire of the damages in this case.— The case was discontinued, as against Joseph Nettles and Leonard Scott, on whom there was no notice or process served; and the cause was continued, &c.

And at Spring term, of one thousand eight hundred and thirty-two, the parties came: and on motion, the

judgment by default, in this case was set aside, and leave was granted to defendants to plead to the merits; and that the deposition of a witness be taken, &c.

And defendant, James Wade, came and craved oyer of the bond, and oyer was granted, and the bond was read him, in the words following, to wit:—

"The State of Alabama,
   "Monroe County, } To wit.

"Know all men by these presents, that I, Jesse C. Farrar, as principal, Leonard Scott, Abel Farrar, Joseph Nettles, senior, Nathaniel Broughton, Daniel D. Shumate, Campbell Sharp, James Wade, and Daniel M'Intosh, as securities, are held and firmly bound unto Israel Pickens, Governor of the State of Alabama, and his successors in office, in the just and full sum of twenty thousand dollars, for which payment, well and truly to be made, we bind ourselves and each of our heirs, executors, administrators and assigns, jointly and severally, firmly, by these presents. Sealed with our seals, and dated this tenth day of September, in the year of our Lord, one thousand, eight hundred and twenty-five; and of the Independence of the United States of America, the fiftieth year.

The condition of the above obligation is such, that whereas the above bound Jesse C. Farrar, has been duly elected, and commissioned the sheriff for the county of Monroe, and State aforesaid. Now, if the said Jesse C. Farrar, shall well and truly perform, and faithfully discharge the duties of his said office of sheriff, as aforesaid, then this obligation to be void—else to remain in full force and effect.

[Signed.]                Jesse C. Farrar.      [L. s.]
                         Leonard Scott.        [L. s.]
                         Abel Farrar.          [L. s.]
                         Joseph Nettles        [L. s.]

[Signed.]                Nath. Broughton.     [L. s.]
                         Daniel D. Shumate.   [L. s.]
                         James Wade.          [L. s.]
                         Daniel M'Intosh.     [L. s.]

"Filed in my office, by ⎫
J. C. Farrar's hand- ⎪
ing the same to me, ⎪
this first day of Au- ⎬
gust, one thousand ⎪
eight hundred and ⎪
twenty-six. ⎭

            "J. H. Draughon, Clerk."

And he defended the wrong and injury, when, &c.
and for plea, said, that plaintiffs ought not to be per-
mitted to have, or maintain their action thereof against
him—because, he said, that the said James Wade
signed said bond for the said Farrar, as sheriff of
Monroe county, upon the belief, condition, &c. and no
other, that John Murphy and Campbell Sharp,
whose names were in the body of said bond, should
sign and seal the said bond: That he signed the said
bond for Farrar, and delivered it to the said Farrar,
to be delivered and offered to the County court for
approval, when Murphy and Sharp should have sign-
ed and sealed the same : That the said bond was ne-
ver approved in court as required by the statute,—
and therefore, he said that the said deed was deliver-
ed as an escrow.   Wherefore, he prayed judgment,
&c.

The said James Wade also made oath that he sign-
ed the bond, when presented to him by the said Far-
rar, and that the names of Sharp and Murphy, were
then in the same, as joint-obligors; and that Farrar
told the deponent, that they were likewise to sign the
same : That under the impression and belief and con-
fident expectation, that they would sign the same, he
delivered the bond again to the said Farrar, for their
signatures, which have never been made to the bond ;

and that he never delivered or signed the same in any other manner, whatever, &c.

To this plea of defendant, Wade, the plaintiffs demurred, and defendant joined in demurrer.

and the *general issue*, in short by consent; and plain-

The defendants also pleaded, *non-assumpsit, nil debit*, tiffs joined *issue* upon the pleas, in the same manner. [There seems to have been a pen drawn through these pleas.—Clerk.]

And then said defendant, James Wade, for a further plea, came and demanded oyer of the said supposed writing obligatory, and the conditions thereof, and every part thereof,—and, for plea, said the plaintiffs ought not to have or maintain their action thereof, against him; because, he said, that he did not execute and deliver the said writing obligatory, above set forth, in said plaintiffs' declaration, or procure it to be done;—and that, he prayed might be enquired of by the country, &c.

And to this plea the said defendant also made oath, that he signed and sealed the said bond above described, and delivered it to said Jesse C. Farrar, the principal therein, believing that John Murphy, whose name was in the penal part of said bond, would execute the same, and to be delivered to the County court of said county, when said Murphy should execute the same: That Murphy never did sign said bond, and that the said bond never was delivered to, accepted or approved by, the judge of the County court of said county of Monroe,—and so never was delivered by defendant, or any one, by his authority—according to the best of his knowledge and belief, &c.

And to this plea of defendant, Wade, the plaintiffs also demurred, and defendant joined in demurrer.

The case was then continued until the Spring term of one thousand eight hundred and thirty-four, when the demurrer of the plaintiffs, to the separate plea put in by James Wade, one of the defendants, and the mat-

6r 8

ters arising under said demurrer, were considered by the court; and it was adjudged by the court, that said demurrer be sustained, and that leave be given to said Wade to amend. Whereupon, said James Wade put in the plea of *non est factum*, to which the plaintiffs demurred; and the cause was again heard on the matters arising on the demurrer, when it was adjudged by the court, that the said last mentioned demurrer be overruled; and, the plaintiffs declining to plead over, or to reply to said plea, it was considered by the court, that the judgment on the demurrer be final, and that said defendant, James Wade, go thence, &c.

On motion of plaintiffs, this cause then came on, as to the other defendants, against whom the cause had not theretofore been discontinued, for want of service of notice: and, it being made to appear to the court, that Abel Farrar has died since the last continuance, on motion of the plaintiffs, the case was abated, as to said Abel Farrar. And, the said Jesse C. Farrar, Daniel D. Shumate, Nathaniel Broughton and Daniel M'-Intosh, on whom the notice in this case was made known, saying nothing in defence, but the motion as to them, remaining wholly undefended. And, the plaintiffs having produced sufficient evidence to the court, that the notice in this case had been duly executed on the defendants, J. C. Farrar, D. D. Shumate, Nathaniel Broughton and Daniel M'Intosh; and that Jesse C. Farrar was sheriff of Monroe county, and that Shumate, Broughton and M'Intosh were the securities of said Farrar, as such sheriff; and that while Jesse C. Farrar was such sheriff, an execution, such as described in the notice, was issued to said Farrar, and that thereon the said Farrar, as such sheriff, had levied, and collected the amount for which execution issued; and that the money so collected, had been duly demanded of said Jesse C. Farrar, on or before the twentieth day of April, one thousand eight hundred and thirty, and not paid over by him. It was there-

fore, considered by the court, that the plaintiffs recover of the defendants, the sum of six hundred and thirty-nine dollars and fifty-four cents, as the amount of the debt of the plaintiffs, so collected by the said Jesse C. Farrar; as also the sum of one thousand five hundred and thirty-four dollars, their damages, at the rate of five per cent. per month, from the twentieth day of April, one thousond eight hundred and thirty, when the amount collected by said Farrar was demanded of him, until the present time. It was also considered by the court, that the plaintiffs recover of said defendants, the sum of eighteen dollars and eighteen and three-fourths cents, the costs of the suit described in the notice, and which were collected by said Farrar, as also the costs of this suit—for all of which execution might issue, &c.

Whereupon, the case was brought to this court upon writ of error, at the suit of plaintiffs in error, who, at this present term assigned for error—

1. That judgment was rendered against them, and in favor of James Wade, one of the defendants, in the court below.

2. That no sufficient cause was shewn to the court below, to authorise the same to render judgment against them.

3. That no sufficient notice was given to them.

4. That judgment is rendered against them for too large a penalty, and does not conform with the notice of the plaintiffs below.

*Porter*, for plaintiffs in error—doubted whether the bond given by the sheriff, for the faithful performance of duty, in this case, was such as would warrant plaintiffs below, in a recovery, in this form of action—and quoted *Seaman vs Dufphey*, (4 Stewart & Porter 159,) to that effect, and also Aikin's Digest, 338.  To shew that a demand for the money collected, ought to have been made on the sheriff, and alleged in the proceedings

below, and also proved, before defendants *could be* liable, he cited, 1 Stewart & Porter, 486 ; Ibid, 471. It did not appear that the money sued for, had been received, while the *fi. fa.* was alive, which was indispensible, to authorise a recovery.—2 Stewart & Porter, 109—111. The statutes, under which the proceedings were brought, ought not to be construed in *pari materia ;* and therefore, plaintiffs below, ought to have set forth fully which of the statutes they determined to rely upon.—*Mc Whorter et al. vs Marrs*, Alabama Reports, 376. To shew that the statute of limitations was a bar to the action.—Aikin's Digest, 122, sec. 46 ; 1 Stew. Rep. 263. The notice should have issued under the seal of the Bank.—Ala. Rep. 23 ; 2 Porter's Rep. 540.

*Clark*, contra—cited 1 Peters, 74 ; 5 Johnson, 160 ; 1 Pick. 500 ; Ala. Rep. 360 ; 1 Stew. 425 ; 2 Ib. 13. There was no sufficient cause for objection to the judgment ; and the objection made, was too general to be noticed as an assignment.—Ala. Rep. 169. No discontinuance could take place.---3 Porter, 398. A judgment by *nil dicit* was good, though there was no plea. There was no assignment, that there was no jury to pass upon the issues made, and therefore the act, (Aik. Dig. 272, sec. 82,) could not be made to apply.---Ala. Rep. 160, 425. Concerning the objection derived from the statute of limitations, he *cited* Chitty's Con. 338, *et ante.* If an appearance were entered, all objections to the notice were waived.---2 cases in 3 Stewart ; 1 Porter's Rep. 431 ; 1 Stew. Rep. 46.

COLLIER, C. J.—On the eighth day of September, one thousand eight hundred and thirty, the defendants in error, by their attorney, issued two notices of like tenor—the one directed to the sheriff of Monroe, and the other to the sheriff of Dallas ; in each of which it

is stated, that Jesse C. Farrar, late sheriff of Monroe, had on a *fieri facias*, (particularly recited,) directed to and received by him from the Circuit court of Dallas, against the goods, &c. of James Knight, and others, collected the amount required to be made by its mandate. In the notices it is alleged, that Farrar "had failed to pay over as he was in duty bound to do," the money thus collected.

It is further stated, that Leonard Scott, Abel Farrar, Joseph Nettles, senior, Nathaniel Broughton, Daniel D. Shumate, James Wade, and Daniel McIntosh, were the securities of Farrar, in his official bond, and that a motion would be made against them and their principal, at the next succeeding term of the Circuit court of Dallas, to be holden on the fourth Monday in September, one thousand eight hundred and thirty, to recover a judgment for the default of the latter, in failing to pay over the money collected on the *fi. fa.* against Knight.

Though the sheriffs to whom these notices were respectively directed, returned them executed—each on one or more of the sureties, yet no proceedings were thereupon had, at their return term. On the twenty-second of March, one thousand eight hundred and thirty-one, a counterpart of the previous notices was issued to, and executed by the sheriff of Monroe, on Jesse C. Farrar. At its return term in April, one thousand eight hundred and thirty-one, a judgment by default was rendered against him, and his sureties, except Joseph Nettles, and *a writ of inquiry* awarded. This judgment, in the spring term of one thousand eight hundred and thirty-two, was set aside, and leave given to plead to the merits.

In the record, we find the following: " Non assumpsit—nil debit—general issue—in short by consent.— *G*. and *Goldthwaite*. Issue—*Pickens & Calhoun*, plaintiffs' attorneys." " There seems to have been a pen drawn through these pleas—*Clerk*."

The cause was then continued from term to term until the spring of one thousand eight hundred and thirty-four, when Wade, one of the defendants below, craved oyer of the bond and condition, and pleaded *non est factum*, verified by special affidavit: to which plea, defendants demurred, and their demurrer being overruled, no replication was offered, and judgment final was rendered for Wade, and against the plaintiffs in error, for a failure to plead ; and they now seek a revision of that judgment here

The notices issued in September, one thousand eight hundred and thirty, must be placed entirely out of view. They were preparatory to a motion to be made, at a term of the Circuit court, next succeeding their issuance ; and to make them available, it was necessary that they should have been produced, and the motion indicated by them, submitted to the court, even if it were intended to continue it until a future term. But no proceedings being then had, these notices must be taken to have spent their force, and could not, at an after term, furnish a warrant for the exercise of jurisdiction by the court.

The case must then be considered, with reference alone to the notice of March, one thousand eight hundred and thirty-one—which was executed on Jesse C. Farrar. Under the statutes of one thousand eight hundred and nineteen, and one thousand eight hundred and twenty-six, a notice to the sheriff, authorises a judgment against him and his securities, for money collected on a *fi. fa.* and not paid over on demand duly made. The latter act goes farther, and entitles the plaintiff not only to a judgment against the sheriff, and his securities, but against any one or either of them.*

---

* Aikin's Dig. 1st ed. 164 and 174.

In the case of *Neale, et al. vs. Caldwell,*\* it is said—
" It has been heretofore determined by this court, in
the case of *Mc Whorter, et al. vs. Marrs,*† that notice to
the sheriff is sufficient to authorise a judgment against
him, and his securities, in a case of this kind." And
speaking of the act of one thousand eight hundred and
nineteen, the court say—" This statute admits of but
one construction, and it is, that proof of notice either
to the sheriff or his securities, is sufficient to entitle the
plaintiff to a judgment against all the obligors in the
sheriff's bond.

A notice to the sheriff, being sufficient to authorise
the rendition of judgment against his securities, for a
default in paying over money collected by him, let us
inquire, whether the proceedings in the case at bar,
be conformable to law. It can hardly be pretended,
that any one of the defendants in the motion, except
Wade, was before the Circuit court. It does not ap-
pear who moved to set aside the judgment by default,
nor who interposed the pleas " *non assumpsit, nil debit,
and the general issue.*" It is, however, but a just infer-
ence, that Wade was the only party who defended;
inasmuch as there is nothing in the record to shew,
that any one else appeared. And even if it were
doubtful for whom " *non assumpsit, &c.*" were plead-
ed, no inference could be made to the prejudice of the
plaintiffs in error; as it seems from a *memorandum* of
the clerk, that they had been erased—which, if neces-
sary, we would presume to have been done by leave
of court.

The plaintiffs then, never having appeared to con-
test the motion before the Circuit court, it is compe-
tent for them to object to the sufficiency of the notice,
or point out other irregularity in the proceedings. The

---

\* 3 Stewart's Rep. 134;
†Ala. Reps. 376.

notice is intended to subserve the two-fold purpose of bringing the party into court, and of advising him of the complaint against him. And according to the construction hitherto placed upon our statutes, should contain a statement of every thing to be proved, in order to a recovery.

The statutes regulating motions against a sheriff, and his securities, for money collected by the former, require that a demand should be made of the sheriff, before he is liable to such a proceeding. In the case of *Barton et al. vs F. and E. Peck*,[*] which was a motion against the sheriff and his securities, for the failure to pay over money collected on a *fi. fa.*, the court remark, that "There is no doubt, it is material to prove a special demand, and the time at which that demand was made; and wherever a demand or notice is material to be proved, it should be averred in the declaration; it should also be averred by whom this demand was made."

In the case before us, the notice does not state that the money was demanded of the sheriff,—nor does it contain any thing which is equivalent to such statement. And the plaintiffs not having done any act which can preclude an exception to the notice, the case just cited, is conclusive to shew, that the judgment must be reversed.

Whether, in prescribing the requisites of a notice, the court should have laid down the rule with so much strictness, as to require a particular allegation of every fact, *material to be proved*, is a question which we are not inclined to consider. It is due to the certainty of the law, that we should sustain the opinions of this court, unless inconvenience or injury would result from such a course. In the present case we can discover none.

---

[*]1 Stewart & Porter, 486.

We decline examining the many other points rais-
ed in the argument, as the view already taken, dispo-
ses of the entire case.

GOLDTHWAITE, J. not sitting in this case.